JENNIFER LAWRENCE *v.* NEW HAMPSHIRE
INSURANCE COMPANY
(10851)

DALY, LANDAU and HEIMAN, Js.

Argued September 21—decision released November 17, 1992

*Donald P. Guerrini,* for the appellant-appellee (defendant).

*Robert R. Sheldon,* for the appellee-appellant (plaintiff).

DALY, J. The defendant appeals from the judgment of the Superior Court confirming an arbitration award in favor of the plaintiff. The plaintiff cross appeals from

the trial court's decision to confirm the arbitration award without adding interest retroactively from the date of the arbitration award to the date the trial court confirmed the award. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. During the academic year 1987–88, the plaintiff lived at the university she attended and her permanent residence was in Darien where her mother, Carol Lawrence, lived in an apartment. Just before the plaintiff returned home for spring break on March 25, 1988,[1] she received a telephone call from her mother's sister, Sherry O'Gata, advising her not to return to Darien. The plaintiff was instructed by her aunt to come instead to Bridgeport to the O'Gata residence where the plaintiff's aunt lived with her husband, Baron, and their two children. After the plaintiff arrived, she was told that her mother had been hospitalized for injuries resulting from an attack by a male coworker. The plaintiff's aunt invited her to stay at the O'Gata residence instead of returning to Darien, and the plaintiff moved into the O'Gata residence. She had her own room, and ate her meals at the O'Gata residence. She slept there and received correspondence and telephone calls there. Most of the plaintiff's personal belongings were kept at her aunt's house. When the plaintiff's mother was subsequently discharged from the hospital, she moved directly into the O'Gata home. The plaintiff and her mother intended to reside permanently at the O'Gata home and had no intention of returning to Darien for fear of another attack.

The plaintiff resided continuously at the O'Gata residence until April 8, 1988. On that date, after running errands for her mother, she was injured in an automobile accident involving a 1986 Chrysler station wagon

---

[1] The spring break lasted until April 8.

that the plaintiff's mother was in the process of purchasing from the estate of the plaintiff's grandfather, Willis C. Lawrence. The driver of the motor vehicle, Robert Putzig, Jr., was at fault for the accident in which the motor vehicle hit a tree. The plaintiff was taken to Norwalk Hospital where she was treated for her resulting injuries. As a result of the collision, the plaintiff incurred medical bills of $206,507.78.

After approximately three months in the hospital, the plaintiff was able to return to the O'Gata home where she remained until late October, 1988, when she and her mother moved to Maryland. During the summer of 1989, they returned to Connecticut briefly to move their furniture out of the Darien apartment. Later that summer, they moved to Florida.

At the time of the collision, the station wagon was insured by The Hartford Insurance Company under a policy with a bodily injury limit of $100,000 per person, the total amount of which was disbursed to the plaintiff because of Putzig's negligence. The O'Gatas were insured by the defendant under an insurance policy that covered two vehicles and afforded uninsured-underinsured motorist coverage of $500,000 per vehicle up to an aggregate total of $1,000,000. The plaintiff filed a claim against the defendant under this policy. The dispute was brought before a three person arbitration panel as provided by the insurance policy and General Statutes (Rev. to 1987) § 38-175c,[2] now recodified in General Statutes § 38a-336.

---

[2] General Statutes (Rev. to 1987) § 38-175c (a) (1) provides: "Every such policy shall provide insurance, herein called uninsured motorist coverage, in accordance with such regulations, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom, provided each insurer licensed

By memorandum dated March 8, 1991, a majority of the arbitration panel[3] found that the plaintiff was an insured under the O'Gata's insurance policy and a resident of the O'Gata household. The plaintiff was awarded $650,000 ($750,000 less the $100,000 disbursed to the plaintiff by The Hartford Insurance Company). Subsequently, the defendant moved to vacate the arbitration award under General Statutes § 52-418. The defendant also moved for modification or correction of the award under General Statutes § 52-419. The plaintiff moved to confirm the arbitration award on April 5, 1991. The trial court denied the defendant's motions, and confirmed the arbitration award without allowing the plaintiff to recover retroactive interest.

On appeal, the defendant claims that (1) the trial court and the arbitration panel improperly concluded that the plaintiff was an insured covered by the O'Gata's uninsured motorist insurance policy, (2) the trial court and the arbitration panel improperly concluded that the plaintiff was a resident of the O'Gata household under the insurance policy issued to Sherry and Baron O'Gata, and (3) the trial court improperly denied the defendant's motion for correction or modification of the arbitration panel's award because it found that the collateral source offset provisions of General

to write automobile liability insurance in this state shall provide such uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but such insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of such policy issued to such named insured. . . . Every such policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. With respect to any claim submitted to arbitration on or after October 1, 1983, the arbitration proceeding shall be conducted by a single arbitrator if the amount in demand is forty thousand dollars or less or by a panel of three arbitrators if the amount in demand is more than forty thousand dollars."

[3] Under the insurance policy, a majority of the panel was required to resolve this dispute. One arbitrator dissented in this case.

Statutes § 52-225a[4] were inapplicable. The plaintiff cross appeals claiming that she was entitled to recover interest on the arbitration award from the date of the arbitration panel's decision to the date on which the award was confirmed by the trial court.

I

In its first two claims, the defendant challenges two conclusions drawn by the arbitration panel and the trial court with regard to the coverage of the uninsured motorist insurance policy. First, the defendant argues that the plaintiff was not an insured under the O'Gata's insurance policy. Second, the defendant maintains that

[4] General Statutes § 52-225a provides: "(a) In any civil action, whether in tort or in contract, wherein the claimant seeks to recover damages resulting from (1) personal injury or wrongful death occurring on or after October 1, 1987, or (2) personal injury or wrongful death, arising out of the rendition of professional services by a health care provider, occurring on or after October 1, 1985, and prior to October 1, 1986, if the action was filed on or after October 1, 1987, and wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages, as defined in subdivision (1) of subsection (a) of section 52-572h, by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section less the total of amounts determined to have been paid under subsection (c) of this section, except that there shall be no reduction for (1) a collateral source for which a right of subrogation exists and (2) that amount of collateral sources equal to the reduction in the claimant's economic damages attributable to his percentage of negligence pursuant to section 52-572h.

"(b) Upon a finding of liability and an awarding of damages by the trier of fact and before the court enters judgment, the court shall receive evidence from the claimant and other appropriate persons concerning the total amount of collateral sources which have been paid for the benefit of the claimant as of the date the court enters judgment.

"(c) The court shall receive evidence from the claimant and any other appropriate person concerning any amount which has been paid, contributed, or forfeited, as of the date the court enters judgment, by, or on behalf of, the claimant or members of his immediate family to secure his right to any collateral source benefit which he has received as a result of such injury or death."

the plaintiff was not a resident of the O'Gata household whose injuries were covered by the uninsured motorist insurance policy.

Our Supreme Court has determined that the substantial evidence test is the appropriate standard for the review of factual determinations of an arbitration panel in cases, such as this, involving compulsory arbitration proceedings required by General Statutes § 38-175c. *Chmielewski* v. *Aetna Casualty & Surety Co.*, 218 Conn. 646, 656, 591 A.2d 101 (1991). The substantial evidence test in the context of arbitration requires that a court determine whether substantial evidence exists in the "record to support the [arbitration panel's] findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Substantial evidence will be found to exist if the . . . record supplies a substantial basis of fact from which the court reasonably can infer the fact in issue." (Citation omitted; internal quotation marks omitted.) Id., 660–61 n.15.

## A

We first address the defendant's claim that the trial court abused its discretion when it determined that the arbitration panel correctly found that the plaintiff was an insured entitled to coverage under the uninsured motorist insurance policy issued to the O'Gatas. The arbitration panel and the trial court found that the plaintiff did not fall within the "owned motor vehicle" exclusion under the insurance policy.

The defendant relies on the first exception to the definition of "uninsured motor vehicle" in the insurance policy issued to the O'Gatas. This exception provides that an "uninsured motor vehicle" does not include "any vehicle or equipment . . . owned by or furnished or available for your regular use." The defendant maintains that the station wagon involved in the accident fell within this exception despite the fact that the plain-

tiff and her mother were not restricted in their use of the station wagon. The defendant maintains that because the plaintiff and her mother were residents of the O'Gata household when they enjoyed such unrestricted use of the station wagon, the station wagon fell within the exception. We disagree.

"Where the language of an insurance policy is clear and unambiguous, the terms of the policy must be given their natural and ordinary meaning." *Horak* v. *Middlesex Mutual Assurance Co.,* 181 Conn. 614, 616, 436 A.2d 783 (1980). The policy at issue in this case is not ambiguous.

Clauses of an insurance contract which limit liability for uninsured or underinsured motorists " 'must be construed most strongly against the insurer.' " *Chmielewski* v. *Aetna Casualty & Surety Co.,* supra, 675, quoting *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 196, 530 A.2d 171 (1987); *Streitweiser* v. *Middlesex Mutual Assurance Co.,* 219 Conn. 371, 375, 593 A.2d 498 (1991). The O'Gata's insurance policy defined "you" and "your" as referring to: "The 'named insured' shown on the declaration; and . . . The spouse if a resident of the same household." The declaration names both Sherry and Baron O'Gata. It is evident, given the policy's definition of "you" and "your," that the exception applies only to a motor vehicle "that is owned by or furnished or available for the regular use of" Baron and Sherry O'Gata. The station wagon was used by the plaintiff and her mother, not by the O'Gatas. On the date of the collision, for example, the plaintiff had been running errands for her mother, not for the O'Gatas. Therefore, substantial evidence existed on the record to support the decision of the arbitration panel.

## B

We now turn to the defendant's claim that the arbitration panel and the trial court improperly determined

that the plaintiff was a resident of the O'Gata household whose injuries were covered by the insurance policy. After reviewing the record of the arbitration proceedings, the trial court ruled that "substantial evidence" supported the arbitration panel's determination that the plaintiff was a resident of the O'Gata household.

Our analysis hinges upon the construction given to "residence of the same household" by our Supreme Court in *Griffith* v. *Security Ins. Co.,* 167 Conn. 450, 356 A.2d 94 (1975). Our Supreme Court quoted Webster's Third New International Dictionary which defined "household" as: " '[T]hose who dwell under the same roof and compose a family: a domestic establishment; specif: a social unit comprised of those living together in the same dwelling place.' " Id., 454; *Middlesex Mutual Assurance Co.* v. *Walsh,* 218 Conn. 681, 686, 590 A.2d 957 (1991). On the basis of this definition, our courts have determined that there are two criteria that must be met for a person to qualify as a "resident of the same household." The first requires that we determine whether the evidence in this case was sufficient to establish that the plaintiff had a close, family-type relationship with the members of the O'Gata household. *Middlesex Mutual Assurance Co.* v. *Walsh,* supra. The second requires that we consider whether the facts in this case were sufficient to establish that the plaintiff actually lived in the O'Gata home. Id.

The defendant does not dispute that the plaintiff is related to the members of the O'Gata household.[5] Instead, the defendant contends that the plaintiff does not satisfy the second criteria that she actually lived in the O'Gata home. Our determination as to the plain-

---

[5] Under the terms of the insurance policy, "Family member" is defined as "a person related to you by blood, marriage or adoption who is a resident of your household."

tiff's status as a resident of her aunt's household rests on a conglomeration of factors. Id., 687. While the intent of the plaintiff to reside in the O'Gata home is one factor to be considered, it is not the controlling one. Id. We must also consider the frequency of the plaintiff's contact with the members of the O'Gata household. Id., 686–87.

Here, the plaintiff and her mother intended to live at the O'Gata home permanently to avoid any possible confrontation with her mother's attacker. Furthermore, the plaintiff had frequent contact with the O'Gata family. The plaintiff took her meals with the O'Gata family. She slept in a room she maintained on the third floor where she kept most of her personal belongings. The plaintiff received her mail at the O'Gata residence as well. After the plaintiff was hospitalized, she returned to the O'Gata residence with the intent to remain there. Therefore, we agree with the trial court's finding that substantial evidence supported the arbitration panel's decision that the plaintiff was a resident of the O'Gata household covered under the uninsured motorist insurance policy when the collision occurred.

II

The defendant also claims that the trial court improperly failed to offset the arbitration award under General Statutes § 52-225a by the amount paid by collateral sources to the plaintiff. On April 29, 1991,[6] the defendant filed a motion for modification or correction under General Statutes § 52-419 (a) (1)[7] in which it requested

---

[6] The defendant claimed below that it submitted its motion for modification or correction of the award under the collateral source provisions of General Statutes § 52-225a to the court clerk's office for filing on March 27, 1991. The clerk returned the motion, however, because the defendant had failed to produce an order to show cause. The defendant's motion for modification was filed on April 29, 1991.

[7] General Statutes § 52-419 (a) (1) provides: "If there has been an evident material miscalculation of figures or an evident material mistake in

that the court reduce the award by the amount of collateral source payments under § 52-225. The trial court found that § 52-225a was inapplicable to this case.

"[W]here judicial review of compulsory arbitration proceedings required by § 38-175c (a) (1) is undertaken under General Statutes § 52-418, the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators." *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 191, 530 A.2d 171 (1987); *Bodner* v. *United Services Automobile Assn.*, 222 Conn. 480, 486, 610 A.2d 1212 (1992). "Although the language of § 52-419 (a) can be read narrowly, the court's role of reviewing the legal determinations of arbitrators de novo and their factual determinations under the substantial evidence standard requires that the statute be given a more expansive meaning . . . ." *Chmielewski* v. *Aetna Casualty & Surety Co.*, supra, 679. The trial court has the authority to modify the arbitration award to reflect the arbitration panel's factual findings and proper legal determinations to give effect to "the intent of the award as it should have been rendered under the law and to promote justice between the parties. General Statutes § 52-419 (b). Otherwise, the legislature's purposes in entrusting uninsured motorist coverage matters to compulsory arbitration under § 38-175c would be frustrated." Id.

Our Supreme Court has set forth three factors that we must consider to determine whether a trial court possessed the authority to modify an arbitration panel's decision pursuant to General Statutes § 52-419. Id., 679–80. First, we must determine whether the issue of collateral source offsets was considered by the arbi-

the description of any person, thing or property referred to in the award," the court shall modify or correct the award. Section 52-419 (b) provides: "The order shall modify and correct the award, so as to effect the intent thereof and promote justice between the parties."

tration panel. Id., 679. Next, we must consider whether either party contested the offset in the trial court. Id., 679–80. Finally, we must determine whether the modifications required only undisputed mathematical calculations allowed by § 52-419.[8] Id., 680. We find that the trial court properly determined that it did not have the authority to modify the arbitration award.

The arbitration clause of the O'Gata's insurance policy is the submission that defined that arbitration panel's authority.[9] The parties agreed in the insurance policy that the arbitration panel had the authority to reduce the award by amounts paid by various specified

[8] In *Chmielewski* v. *Aetna Casualty & Surety Co.*, 218 Conn. 646, 656, 591 A.2d 101 (1991), the Supreme Court determined that the trial court properly modified the arbitration award to account for money disbursed by the tortfeasor's insurance policy and that the trial court should have modified the arbitration award to account for the plaintiff's comparative negligence. "Both these issues were decided by the arbitrators, neither was contested by the parties in the trial court, and they required only undisputed mathematical calculations. The court had ample authority under § 52-419 (a) (1), as we have construed it, to include those calculations in its modification." Id., 679–80.

[9] The arbitration clause provides:

"A. If we and an 'insured' do not agree:

1. Whether that person is legally entitled to recover damages under this Part; or

2. As to the amount of damages; either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

"B. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

"C. Unless both parties agree otherwise, arbitration will take place in the county in which the 'insured' lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the 'insured' is legally entitled to recover damages; and

2. The amount of damages. . . ."

sources to the plaintiff.[10] Accordingly, the arbitration panel reduced the award by the $100,000 paid to the plaintiff by The Hartford Insurance Company for the negligence of Putzig. No other offset was brought before the arbitration panel for its consideration.

Both parties agreed pursuant to General Statutes § 52-416[11] that the arbitration panel's authority over this case would end thirty days after the arbitration panel convened to decide the outcome of this case. The panel convened on February 18, 1991. Therefore, the period ended on March 18, 1991. Within this time period, the defendant did not submit any request for collateral source offsets. Thus, the first criterion requiring that the arbitration panel consider the offsets by which the defendant moved to reduce the award was not satisfied because the arbitration panel did not possess the authority to consider them.

---

[10] The policy provides:

"B. Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:

1. Paid because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible. . . .

2. Paid or payable because of the 'bodily injury' under any of the following or similar law:

a. workers' compensation law; or

b. disability benefits law.

"C. Any payment under this coverage will reduce any amount that person is entitled to recover for the same damages . . . ."

[11] General Statutes § 52-416 provides: "(a) If the time within which an award is rendered has not been fixed in the arbitration agreement, the arbitrator or arbitrators or umpire shall render the award within thirty days from the date the hearing or hearings are completed, or, if the parties are to submit additional material after the hearing or hearings, thirty days from the date fixed by the arbitrator or arbitrators or umpire for the receipt of the material. An award made after that time shall have no legal effect unless the parties expressly extend the time in which the award may be made by an extension or ratification in writing.

"(b) The award shall be in writing and signed by the arbitrator or arbitrators, or a majority of them, or by the umpire. Written notice of the award shall be given to each party."

As to the second factor, the plaintiff, before the trial court, contested the award reduction sought by the defendant in its motion for modification or correction of the arbitration award. In its motion, the defendant requested that the award be reduced by collateral source offsets that were not before the arbitration panel when it had authority to determine the matter. The trial court could not modify the award to reflect the factual findings made by the arbitration panel because the motion for modification requested relief that was not within the factual findings of the arbitration panel. See *Chmielewski* v. *Aetna Casualty & Surety Co.,* supra, 679. The defendant's motion did not satisfy the third criterion because the defendant's motion for modification did not involve "undisputed mathematical calculations," which could have been determined based on the submissions and findings of the arbitration panel, as was the case in *Chmielewski* v. *Aetna Casualty & Surety Co.,* supra. The trial court did not have the authority under General Statutes § 52-419 (a) (1) to reduce the plaintiff's arbitration award by collateral source offsets in accordance with General Statutes § 52-225a.

## III

In her cross appeal, the plaintiff claims that she was entitled to recover interest of $44,163.84 on the arbitration award that accrued under General Statutes § 37-3a from the date of the award on March 13, 1991, to the date the trial court rendered judgment on November 15, 1991.

General Statutes § 37-3a confers on the trial court the discretion "to award prejudgment interest on an arbitration award retroactively to some date prior to the date of the trial court's judgment affirming the award. . . . Implicit in that determination is the conclusion that the prior date may be the date of the arbitration award." (Citation omitted.) Id., 675–76.

General Statutes § 37-3a allows recovery of interest accrued where the award has been improperly withheld. We will not reverse the trial court's decision without a clear abuse of discretion. Id., 676. "In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of [the trial court's] action." (Internal quotation marks omitted.) *Walton* v. *New Hartford,* 223 Conn. 155, 169, 612 A.2d 1153 (1992); 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 10C (2), p. 35.

It is within the trial court's discretion to determine whether interest must be paid for wrongfully withholding the award, and, if so, the amount thereof. *Middlesex Mutual Assurance Co.* v. *Walsh,* supra, 701–702; *Metcalfe* v. *Talarski,* 213 Conn. 145, 160, 567 A.2d 1148 (1989). We must not determine only whether the money is payable but also " 'whether the detention of the money is or is not wrongful under the circumstances.' " *Middlesex Mutual Assurance Co.* v. *Walsh,* supra, 702.

The record supports the trial court's conclusion that the award was not wrongfully withheld by the defendant. Therefore, we cannot say that the trial court abused its discretion in deciding not to award prejudgment interest under § 37-3a.

The judgment is affirmed.

In this opinion the other judges concurred.