[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISIONON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
In this case the plaintiff Sharon Meola was operating a car insured by Travelers Insurance Company when a tortfeasor negligently caused an accident injuring her. The tortfeasor's company paid the limits of the underlying policy to the plaintiff and an underinsured motorist claim was made by the plaintiff under both the car owner's Traveler's policy and her mother's Peerless policy. Peerless has filed this motion for summary judgment. Both sides agree that there would be coverage under the Peerless policy if the plaintiff Sharon Meola could establish under the terms of the contract of insurance that she was a family member. That is, referring to the mother, the Peerless policy provides coverage for anyone who can be defined as "a person related to you by blood marriage or adoption who is a resident of your household." There is no dispute between the parties that Sharon Meola is related by blood to the mother, Jean Meola. The question in dispute is whether under the terms of this policy Sharon Meola was a "resident" of the mother's household on September 21, 1991, the date of the accident.
The moving party in a motion for summary judgment must show there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, P.B. § 384, seeDoughty v. Graham, 161 Conn. 248, 250 (1971).
In this case the parties do not dispute any material facts they just emphasize different facts as being critical to a determination of whether the plaintiff would be protected by the terms of her mother's policy. Therefore the issue seems to be resolvable by means of this motion since it depends on a question of contract interpretation and each side has sought to set forth those facts necessary for that determination.
Was the plaintiff a resident of her mother's household? The defendant submitted an affidavit from the CT Page 7755 mother which states that on the date of the accident, September 21, 1991, the plaintiff was not a member of her household. It goes on to state that she, the mother, lived at a separate address from her daughter at 171 West Street in Southington. The mother goes on to state that from May of 1991 until early October 1991 Sharon Meola lived at 30 Crescent Street in Plantsville and that Bill Nelligan for most of that time was living at that address. In October Sharon Meola moved to Massachusetts with Mr. Nelligan. The mother states in her affidavit that on that date of the accident her daughter was 31 years old. The defendant also submitted an affidavit from the landlady of the 30 Crescent Street address which states that the plaintiff signed a lease on April 20, 1991 with Nelligan; the lease was for a period from May 1 through December 1, 1991. The lessees moved in together on May 1 and they lived at Crescent Street continuously together until August 1 when Nelligan moved out. But the affidavit goes on to say that Ms. Meola continued to live at Crescent Street continuously until October 12, 1991. Ms. Meola lived there on September 21, 1991 because she told the landlady about the accident and the landlady drove her from Crescent Street to the hospital. The landlady helped Ms. Meola move out of the apartment on October 12, 1991.
The plaintiff submitted several affidavits. The affidavit from the plaintiff states that she moved into her parents' house at 171 West Street on January 3, 1989 and lived there continuously "until May 1, 1991 when I lived at 30 Crescent St., Plantsville." She returned to her parents' house October 1, 1991 where she kept various items of personal belongings including clothing, books, and various items of furniture. She further states she continued to receive mail at the West Street address, used that address for excise tax, tax returns, job applications, driver's license, voting address, references, and bills. She then says "I moved to 30 Crescent Street with my fiance in May of 1991 and lived there approximately 5 months. I periodically slept back in my room at 171 West Street." She then said she moved back to her mother's house when the relationship did not work out — from her affidavits and the two others submitted the court takes the date of moving back to the mother's house to be in October of 1991. CT Page 7756
The brother submitted an affidavit saying that he resided at his mother's house on October 1991 and that he has "personal knowledge that (his) sister Sharon Meola moved back home . . . at this time."
The plaintiff also submitted an affidavit from the mother saying the daughter moved into her West Street home in October of 1991 and in October Ms. Meola's clothing and furniture were at the West Street address. The mother also states in this affidavit that when she gave her original affidavit to the defendant's representative she was on medication and in pain and told that individual she was not well enough to get the document notarized. Interestingly, however, she does not deny any of the specific factual statements made in this first affidavit, one of which was that in October 1991 her daughter moved to Massachusetts. The court can only assume that after moving out from the Crescent Street apartment in October, after the accident, later in the same month she moved in with her fiance in Massachusetts whereas the mother in her first affidavit said "she currently resides" (date of affidavit, December 15, 1993).
The question then is based on these affidavits and the facts they established for the purposes of this motion, can the plaintiff be regarded as a member of her mother's household?
An early case is Rathburn v. Aetna Casualty SuretyCo., 144 Conn. 165 (1956). That case in its discussion at pages 168-169 said the term "family" is broader than "household." In that case a woman got married leaving her mother's house and set up an apartment with her husband. When he left for the military she stored her furniture and went back to live with her mother and at that time the accident happened. She paid her mother room and board when she moved back in and intended to leave the mother's house when her husband returned from the service, which she in fact did. The court had to determine whether this woman was a member of the mother's household on the date of the accident. It held that she was, noting that she contributed to the support of the family group "which manifests a single household." It noted that when she gave up her own home and stored her furniture against the time of her husband's return and took up residence again with CT Page 7757 her mother, she terminated her status as the member of another household. The court cited Webster's Dictionary in saying members of a household are "those who dwell under the same roof and compose a family", id. page 169.
Griffith v. Security Ins. Co., 167 Conn. 450, 454
adopts the latter definition citing Webster's and in fact emphasizing certain aspects of the definition. A household according to the court is "those who dwell under the same roof and compose a family: a domestic establishment; specif: a social unit comprised of those living together in the same dwelling place", id p. 454.
The question before the court was whether an injured child, Richard, was a member of the father's household at the time of the accident under the terms of the father's policy. The court noted the mother and father had been divorced for four years and lived at separate residences only one-half mile apart. The father continued to support the children, saw them frequently and they visited him at his apartment. Very significantly for this case the court noted the father "frequently went to 93 Whiting Street (the wife's residence), often stayed overnight and babysat there. He also kept clothes and a razor at 93 Whiting Street and had meals with his children three to seven times a week. But the court went on to note
 "All these uncontested findings clearly indicated a close paternal relationship between Granville Griffith and his children but, in view of the fact that it is also undisputed that he lived at 450 Main Street, one half mile away from 93 Whiting Street, they do not support an additional finding that he lived at 93 Whiting Street so that he and Richard were members of the same household". . . id at page 455.
The critical question posed by these cases in deciding whether someone is a member of a household is a rather common sense one — did the plaintiff actually live in the home? See Lawrence v. New Hampshire Ins. Co., 29 Conn. App. 484,492 (1992).
But in what might be considered a contrary approach the court in Middlesex Mutual Assurance Co. v. Walsh, CT Page 7758218 Conn. 681, 686, 687 (1991) reviewed the Griffith case and like Griffith also noted that the father in that case kept his personal and business records at his separate apartment and used the apartment address for formal purposes such as voting, motor vehicle registration and tax purposes.
Reading Middlesex Mutual then, the only way to harmonize its reference to such factors as mailing address, voting address, etc. with the "dwelling under the same roof" language in the earlier cases of Rathburn andGriffith is to say that these factors became important only in certain categories of cases.
Thus in the case of divorced parents with children, one or the other parent may have frequent contact with the child at the home of the ex-spouse and as in Griffith even stay at that other home and keep belongings there. The cases on this general subject are collected in 96 ALR3d pp. 804 et seq. "Automobile Insurance — Member of Household." The courts also face situations where often an unemancipated child goes to college or enters the military and necessarily establishes a separate residence but also visits home frequently uses the parents' home as a mailing address and a place to store his or her belongings. In such cases the courts unanimously find that the child involved in an accident as being a member of the parents' household.
In these types of cases however where the party sought to be brought under the policy in fact lived in and/or maintained at least a temporary residence other than or in addition to the residence covered in the policy it becomes important for the court to examine factors such as mailing or tax address, voting address, location of at least some personal belongings, etc., cf Allstate Insurance Co. v.Jahrling, 229 N.Y.S.2d 707, 708 (1962). Boswell v. SouthCarolina Ins. Co., 509 A.2d 358, 363 (PA., 1986), Morgan v.Illinois Farmers Ins Co., 392 N.E.2d 37, 39 (Minn. 1986).
In fact these considerations become important in any case where a child whether in the military or not has a separate residence but frequently stays overnight at a parent's home and spends a substantial amount of time there, cf In the Matter of Aetna Casualty Surety Co.,564 N.Y.S.2d 778, 779 (1991), cf Middlesex Mutual Assurance Co. v.CT Page 7759Walsh, 218 Conn. 681, 688-689.
Before all of these factors become critical however the plaintiff claiming coverage should at least have to meet a threshold requirement that at the time of the accident or a reasonable time before it she actually lived in the parental home or under the same roof as the older cases more exactly put it for established periods of time and on a frequent basis. Here we have an emancipated adult woman who signed a lease to rent an apartment for seven months. She leaves the mother's home to live with her boyfriend and the undisputed evidence is that she lived continuously with him until August at the new address until he left and continuously until after he left until the accident, and after the accident until she moved back to her mother's in October. She left the mother's the same month to resume living with her fiance in Massachusetts. During any of this time there is no indication she was supporting the mother.
The plaintiff's own affidavit is replete with language that as of May 1, 1991 she established a new residence with her fiance. She said she lived at her mother's "until May 1, 1991 when I lived at 30 Crescent Street, Plantsville . . . In October of 1991 I returned to my room at my parents' house . . . I moved to 30 Crescent Street with my fiance in May of 1991 and lived there approximately 5 months."
The fact that interspersed in the affidavit is information that she kept some belongings at her mother's or used it as a mailing or business address for several purposes is irrelevant to the fact she was not living at the mother's and dwelling under the same roof with her.
The only possible language in all the defendant's submitted affidavits that would make these factors relevant is the elusive statement that while she lived at Crescent Street five (5) months she "periodically slept back in my room at" her mother's home. But the next sentence referring to a post-accident date in October says, "When the relationship did not work out I moved back to my mother's house." Thus these periodic stays in addition to being completely undefined and thus conclusory in no way interfere with the notion that despite them she was still CT Page 7760 living in a place apart from her mother. It is up to the parties to put the appropriate facts in issue and to do so in such a way that favorable inferences don't have to rest on speculation.
Finally several cases cited by the plaintiff are really not relevant to the issue before the court. It is no doubt true that in certain situations courts have held that a person can have more than one residence and this can become important in resolving questions of abode service and notice and some questions in divorce cases. But the considerations which are of concern to courts in those types of cases have nothing to do with the particular question of interpretation of a clause in a contract governing the rights of parties under an insurance contract.
The motion for summary judgment is granted.
Corradino, J.