[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
In this case the plaintiff is seeking uninsured motorist benefits from the defendant insurance company under her parents insurance policy. The defendant company has filed a motion for summary judgment claiming the plaintiff is not entitled to such benefits because she was not a resident of their household on the date of the accident which forms the basis for this claim and therefore was not an insured under the policy.
In its memorandum the defendant presented certain facts which it claims are undisputed. The case arises out of injuries the plaintiff allegedly received in a motor vehicle accident that occurred on August 28, 1991. The plaintiff claimed she was covered under a policy issued by the defendant to her parents. That policy provided coverage for any "insured" which includes a "family member" and that term is defined in the policy as "a person related to you by blood marriage or adoption who is a resident of your household." The defendant denied coverage because it concluded she was not a "resident" of the parents' household and thus not an "insured" under the policy.
The defendant relies on a deposition of the plaintiff and an affidavit of her mother Lorraine Wiley. The defendant notes that at the time of the accident the plaintiff was twenty years old. She had quit school at eighteen and went to work full time to support herself. When she was eighteen she became engaged and lived with her fiancee and his parents. At nineteen she moved to Florida for two months. Before the accident her parents were not supporting the plaintiff financially. They did not keep her bedroom in their house intact; in fact they converted her bedroom into a recreation room; the parents also removed the plaintiff's furniture from their house. It is not clear when these things occurred in relation to the accident.
Two months before the accident she moved out of the house calling the police to help her get her clothes and CT Page 10504 escort her out of the house. At that time the plaintiff went to live with a friend, Ms. Perrone. She was living off money she had saved. From the time she moved from her parents until the date of the accident the plaintiff had no contact or communication with her parents. After being released from the hospital in September 1991, the plaintiff returned to live with her friend, Perrone.
The plaintiff, Denise Wiley, submitted an affidavit in support of her objection to the motion. It does not dispute the above mentioned facts but brings additional matters to the courts attention.
She states that from 1987 when she moved to Connecticut until 1993 when she moved out "finally" she always had some portion of her personal belongings at her parents' house. She always had a "conflictive sort of relationship" with them and between 1987 and 1993 ran away or was kicked out six times but always ended up returning home.
She said for an extended period she lived elsewhere besides her parents but ultimately she returned in the spring of 1989.
"To the best of her recollection" she never filed a mail forwarding address but continued to have her mail sent to her parents who also never filed a postal forwarding order either.
From 1987 through 1993 she never rented an apartment or condo but "generally had short stays with friends nothing more than a year" and always moved back to her parents for "some period of time or another."
When she returned from Florida in January 1992 after two months she returned to her parents' house.
This pattern of having fights with her stepmother, patching things up, returning then leaving existed even before she was adopted in 1986.
When she left her parents' home in June 1991, Wiley said she took some clothes but left all of her other clothes and the majority of her stuffed animals and her CT Page 10505 stereo there as she knew she would return as she always had in the past. She first moved in with friends of her parents then at the end of June or the first part of July 1991 she "settled in" at Ms. Perrone's house. This was not a long term arrangement, she slept on a couch.
While in the hospital after the accident her parents visited and urged her to return home but she refused being "extremely angry and upset after the horrible fight" she had with her stepmother in June 1991. After her release from the hospital she moved back with Perrone for a couple of months. The affidavit then says "I eventually moved back in with my parents . . . . and stayed there for ___ months/years until I finally moved out finally in July 1993." "Eventually" isn't defined and the blank isn't filled in.
The affidavit concludes by Wiley saying that at the time of the accident she considered herself to be living at her parents' house and after having "residence" defined to her by her lawyer she concluded she was indeed a resident of her parents' house at the time of the accident.
The defendant in reply to the plaintiff's affidavit also submitted information revealed in a deposition of the plaintiff's mother. Mrs. Lorraine Wiley submitted copies of three W2 forms of the plaintiff which were part of her 1990 income tax return. All three list her residence as that of her then fiancee not that of her parents.
The moving party in a motion for summary judgment must show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Doughty v.Graham, 161 Conn. 248, 250 (1971). It is also true that a court, in hearing such a motion, must view the evidence in the light most favorable to the nonmovant, DHR Constructionv. Donnelly, 180 Conn. 430, 434 (1980). Such motions are "particularly inappropriate where the inferences which the parties seek to have drawn deal with the questions of motive and subjective feelings and reactions, United OilCo. v. Urban Redevelopment Commission, 158 Conn. 364, 375-376
(1969). That case also said that summary judgment should be denied where there exist genuine issues of fact and inferences of mixed law and fact to be drawn from the evidence. The same test should be used as that relied upon CT Page 10506 in deciding whether a party would be entitled to a directed verdict. United Oil Co. involved, however, an eight count complaint in which the plaintiff sought declaratory relief and made a broad range of allegations some of which included claims that certain conduct was "illegal, arbitrary, unreasonable, in bad faith and in abuse of (the defendants') discretion and powers", id. pp. 367-368.
In this case the court is faced with the problem of interpreting a clause in an insurance contract. As indicated in the previous discussion, the parties don't dispute any material facts they just emphasize different facts as being critical to a determination of the question as to whether the plaintiff here is protected by the terms of her parents' insurance policy. The plaintiff submitted an affidavit in this case. Her affidavit has been referred to generally and contains 32 paragraphs. Of these only three can be fairly said to raise questions of state of mind or intent. Paragraph 16 indicates in June 1991 the plaintiff had a fight with her mother and she was kicked out. She called the police to escort her into the home to get some of her clothes but she left all of her other clothes, stereo and stuffed animals as she "would return as (she) always had in the past." The accident out of which the suit arises occurred in August 1991. In paragraph 23 she states at the time of the accident "I still considered myself to be living at 87 Huckleberry Road, Manchester" (her parents' home). In paragraph 31 the plaintiff gives her legal conclusion that after her lawyer explained to her "what `residence' means" she is "of the opinion that 87 Huckleberry Lane" was definitely (her) residence at the time of the accident.
The plaintiff's legal conclusions as to what she considered her residence can't insulate the resolution of this issue by means of summary judgment. Her statement that she knew she would return to her parents' home as she always did and that she considered herself to be living at that home on the date of accident are accepted by the court as factors to be considered in resolving the legal issue before the court. But these expressions of mental state or future intent, assuming as the court does that they are true, are not in themselves determinative of the legal issue before the court — interpretation of a contract clause. The question is, given this mental state and CT Page 10507 intent and given the other uncontested facts of the case indicated by affidavits and other material, should this plaintiff be regarded as a resident of her parents' household on August 21, 1991. Or to put in a light most favorable to the plaintiff — given the facts presented coupled with her mental state about where she believed she resided and her belief she'd return to her parents even though she moved out of their house in June 1991, can she still be regarded as a resident of her parents' household under the terms of the policy.
In the legal and factual context of this case the above referred to mental states and intention and uncontested facts would be before a trial judge having to decide a motion for directed verdict as they would be before a judge having to decide a summary judgment motion. The defendant does not and is not being permitted to dispute the truthfulness of those mental states so the court can address the questions as to whether given the facts presented it can interpret this contract based on these facts.
Discussion of Merits
One thing that Middlesex Mutual Assurance Co. v.Walsh, 218 Conn. 681, 687 (1991) makes clear is that mental state and expressions of intent are not controlling when a court is faced with deciding whether a claimant seeking uninsured motorist benefits argues that he or she is a member of the insured's household.
In the Middlesex case a mentally disturbed man was killed in an auto accident. His father made a claim under the policy and the company denied coverage on the basis that the son was not a member of the household. The company appealed an arbitration award against it and in arguing before the Supreme Court apparently put great weight on the fact that several times the deceased told the police and authorities at medical institutions that he lived in other places besides his parents' home. The court rejected the notion, advanced by the company, that such expressions of intent should control the outcome of the case. The court said at 218 Conn. 687:
Such an approach would inappropriately CT Page 10508 transform the residency inquiry into a mere weighing of contradictory expressions of intent, thereby diminishing the significance of the objective factors that we have previously found indicative of household residence. See Griffith v. Security Ins. Co. supra pp. 455-457; Rathbun v. Aetna Casualty Surety Co., supra. Certainly, had Donald's statements unanimously expressed his belief that he lived in Walsh's household, Middlesex would not favor the narrow analysis it now urges us to undertake. In neither case would it be appropriate to attach controlling significance to such expressions of intent.
 We therefore adhere to the approach to the issue of household residence outlined in Griffith, that is, the statements expressing the intent of the claimed resident as to where he or she lives are merely one factor among many to be considered in determining household residence.
At page 686 referring to Griffith the court in fact said that it did not suggest Griffith's intent as implied from his statements was dispositive, "Rather, we focused primarily on the objective factors" relevant to the operative legal test to determine household residency.
In Middlesex the court indicates that determination of residency turns on the evaluation of "dual considerations" — whether the claimant had a "close family type relationship" with the inhabitants of the household and in addition whether "he actually lived in the household", id. p. 686. This the court regarded as did the Griffith court a variation of the definition in Webster's which defines "household" as "those who dwell under the same roof and compose a family: a domestic establishment; specific social unit comprised of those living together in the same dwelling place", also see Lawrence v. New HampshireCT Page 10509Insurance Co., 29 Conn. App. 484, 492 (1992) which states the "dual consideration" test is in fact our law.
(a)
The problem with the plaintiff's position is that at the time of the August accident she had not been living with her parents for two months and when released from the hospital in September did not go to her parents' home but returned to live with the friend she had been staying with for over a month.
The second prong of the dual consideration test is that the claimant, here the child, who claims to be a member of the household, must have "actually lived in the household." Here, the plaintiff, an emancipated twenty year old, was not living at her parents for two months prior to the accident and had no contact with them during that period of time.
In Lawrence v. New Hampshire Insurance Co., supra at page 493 and Rathbun v. Aetna Casualty Surety Co., supra at page 167 the parties claiming to be members of the household were actually living in the household at the time of the accident. Even in Griffith for a portion of each week the father lived in the apartment where the claimant son and ex-wife lived but a problem was presented because part of the week he lived in his own apartment one half mile from his ex-wife. So the court had to consider a variety of factors such as mailing address, where the father kept belongings, where he ate meals, the number of times he visited to determine where the father lived — if he was found to be part of a household at his ex-wife's apartment the son would have been able to make a claim under the father's policy.
Middlesex is similar to Griffith in the sense that the son whom the father administrator claimed was a party of the household was mentally disturbed; he randomly stayed overnight at friends or perhaps even in the what he described as the "forest" but he "spent a great number of his days and nights during the years prior to his death at his parents' home." It is in that context that the court said that although he visited and stayed overnight with friends "he always came home eventually", 218 Conn. at p. CT Page 10510 688. Concentrating on that language and given the context of the facts in Middlesex, that case can't be read to in effect invalidate the need to establish second prong of the dual consideration test — the person dwelled in the house. In Griffith and Middlesex at the time of the accident the person stayed at one or another place and the court had to determine by considering a variety of factors where the person actually lived. That is not the case here and the fact that in the past the plaintiff always returned home after leaving, thought she would at some point do so here when she moved out in June 1991, and even left belongings at her parents' cannot change the simple objective fact that at the time of the accident and two months before she was not dwelling in her parents' home. She had been at a friend's home not for an overnight or weekend visit but for over a month during which she had no contact with her parents.
Neither is this case that special category of cases where a child leaves home for college or enters the military and after an accident coverage depends on whether the child is considered to be a member of the parents' household. There too the courts consider a variety of factors in trying to decide if the residence in college or at an armed services base removes the child from the parents' household. Courts unanimously hold that such absences do not ipso facto remove the child from the parents' home and consider such factors as whether the child returns home on vacations, holidays or miliary [military] leaves, the child's mailing address and whether his or her bedroom is maintained in the house, to see if a permanent move was intended. Allstate Insurance Co. v. Jahrlung,229 N.Y.S.2d 707, 708 (1962), Boswell v. South CarolinaInsurance Co., 509 A.2d 358, 363 (Pa., 1986), Morgan v.Illinois Farmers Ins. Co., 392 N.W.2d 37, 39 (Minn., 1986). This may be the old "kids at school" exception to the general rule but at least at the time of the accident the child can be said to have two residences in fact — one at school or on some military base and the ongoing one at home.
(b)
Neither does the plaintiff meet the other prong of the "dual consideration" test — "a close family type CT Page 10511 relationship with the inhabitants of (the) household",Middlesex, 218 Conn. at p. 686. In her own affidavit the plaintiff attests to an ongoing difficult relationship with her parents. She ran away from or was thrown out of the house six times in a five or six year period. Two months before the accident she had such a serious confrontation with her stepmother that she was "kicked" out of the house "with only the clothes on (her) back", see par. 16 of Wiley affidavit. She had to call the police to escort her into the house to get her clothing. She describes the fight as "horrible" and when her parents visited her in the hospital after the accident she declined to return because she was "still extremely angry and upset," paragraph 20 of plaintiff's affidavit. She had no contact with her parents from June 21, 1991 when she was "kicked" out until the accident, paragraph 11 of mother's affidavit. According to her and her mother she did not return to the parents' home after being released from the hospital although she "eventually" moved back there. There is not an iota of evidence presented by way of affidavit or otherwise that at the time of this accident this plaintiff had a "close, family type relationship with the inhabitants of that household", Middlesex, supra at page 686.
On either or both grounds of the dual consideration test, that test set up in Middlesex and articulated explicitly in Lawrence v. New Hampshire Ins. Co., supra, I find that the defendant is entitled to prevail and the motion for summary judgment is granted.
Corradino, J.