# Anthony D'Addio *v.* Connecticut Insurance Guaranty Association

# Connecticut Insurance Guaranty Association *v.* Anthony D'Addio
## (11410)

Daly, Heiman and Freedman, Js.

Argued February 16—decision released March 30, 1993

*Ira B. Grudberg,* with whom, on the brief, was *Alice S. Miskimin,* for the appellant (plaintiff in the first case, defendant in the second case).

*Philip F. von Kuhn,* for the appellee (defendant in the first case, plaintiff in the second case).

HEIMAN, J. The plaintiff appeals from the trial court's judgment vacating the arbitrators' award.[1] On appeal, the plaintiff asserts that the trial court improperly (1) vacated the arbitrators' unanimous finding that he was insured under his mother's automobile insurance policy by (a) misapplying the substantial evidence rule and (b) failing to follow Connecticut precedent on what constitutes a family member's residency in a household, and (2) reviewed de novo the arbitrators' damage award. The plaintiff also asserts that (3) he is entitled to prejudgment interest from the date of the arbitration award and (4) the trial court properly refused to vacate the arbitrators' award on the ground of the arbitrators' misconduct.[2] We reverse the trial court's judgment.

The following facts are necessary for a resolution of this appeal. On December 23, 1988, while operating his employer's motor vehicle, the plaintiff was involved in an accident with an uninsured motorist. The accident

---

[1] For purposes of this opinion, the claimant Anthony D'Addio will be referred to as the plaintiff. The insurer Connecticut Insurance Guaranty Association will be referred to as the defendant.

[2] The defendant asserts that this court could alternatively affirm the trial court's judgment vacating the arbitrators' award on the basis that there was misconduct on behalf of the arbitrators in refusing to grant its application for continuance. See Practice Book § 4013 (a) (1) (A).

gave rise to a claim for uninsured motorist benefits and a claim for workers' compensation. The uninsured motorist claim was brought against American Universal Insurance Company (AUIC) and was based on an automobile policy issued to the plaintiff's mother. AUIC was placed in receivership and Connecticut Insurance Guaranty Association (CIGA) was substituted as the defendant.

Under the terms of the policy and General Statutes § 38a-336 (c), the plaintiff's claim for uninsured motorist benefits was subject to arbitration before a three member panel. The defendant unsuccessfully moved that the arbitration be continued until the time that the plaintiff had been awarded workers' compensation benefits for the permanent partial disability that he claimed arose out of the accident.

During the course of the arbitration hearing, the parties presented the following evidence. The plaintiff lived on the third floor of his mother's house. At the time of the arbitration, the plaintiff was thirty-two years old and had lived on the third floor since the age of sixteen. The plaintiff testified at the hearing that he moved to the third floor because he "got fed up with [his family's] arguing. [He] had to go somewhere. [He] was out." There was conflicting testimony as to whether the plaintiff had running water on the third floor or had his own kitchen or bathroom facilities. The plaintiff paid rent to his mother and shared a stairway to gain access to the third floor. He occasionally drove his mother's car to work when it was too rainy to ride his bicycle.

The parties also stipulated that the plaintiff had received $16,387.32 in medical expenses and $28,736.25 in temporary total benefits, for a total of $45,123.57 from the workers' compensation carrier. The plaintiff's attorney stated that the plaintiff's physician assessed

his injuries and found that the plaintiff had a 15 percent permanent partial disability of his cervical spine and a 7.5 percent disability of his lumbar spine.[3] The parties stipulated that using the plaintiff's physician's assessment and computing an award under the workers' compensation statutes, 100 percent disability of the neck entitles a claimant to 175 weeks at the prevailing compensation rate and that 100 percent disability of the back entitles a claimant to 520 weeks at the prevailing compensation rate. They further stipulated that the plaintiff's compensation rate was $422.07. Under these stipulations, the plaintiff's claim would be $16,460.73 for his back injury and $9232.78 for his neck injury.

On February 14, 1992, the arbitrators unanimously found the issue of liability and coverage in favor of the plaintiff. They also found the following: the claimant sustained permanent injuries and damages as a result of an automobile accident in the course of his employment at United Illuminating; United Illuminating provided $20,000 in uninsured motorist coverage and that that coverage is primary; the available uninsured motorist coverage afforded by CIGA is $299,900; and the defendant is entitled to a credit of $25,123.57, which is the balance of the workers' compensation credit agreed on by the parties after applying the first $20,000 to the primary coverage. The arbitrators, however, declined to find the amount of any award the workers' compensation commissioner might make and to credit that amount of workers' compensation yet to be paid against any amount due to the plaintiff from the defendant.

[3] Prior to the arbitration, the workers' compensation carrier conducted an independent medical examination and the examiner found that the plaintiff had a 10 to 15 percent permanent partial disability of his cervical spine. The examiner, however, did not make a finding as to the extent of the injury to the plaintiff's lumbar spine.

The plaintiff moved to confirm and the defendant moved to vacate the award.[4] Upon motion, the trial court consolidated the cases. The court found that the record lacked substantial evidence to support the arbitrators' conclusion that the plaintiff was a resident of his mother's household. The trial court vacated the arbitrators' award.[5] This appeal ensued.

I

The plaintiff asserts that the trial court improperly vacated the arbitrators' unanimous finding that he was insured under his mother's automobile insurance policy by misapplying the substantial evidence rule and by failing to follow Connecticut precedent on what constitutes a family member's residency in a household. We agree.

When reviewing an arbitration panel's factual findings considering underinsured motorist coverage, our courts' standard of review is whether the arbitrators' findings are supported by substantial evidence. *Rydingsword* v. *Liberty Mutual Ins. Co.*, 224 Conn. 8, 21, 615 A.2d 1032 (1992); *Chmielewski* v. *Aetna Casualty & Surety Co.*, 218 Conn. 646, 660–61, 591 A.2d 101 (1991). The test in this context requires that a court determine whether substantial evidence exists in the "record to support the [arbitration panel's] findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Substantial evidence will be found to exist if the . . . record supplies a substantial basis of

---

[4] The plaintiff also moved for an award of prejudgment interest upon the confirmation of the arbitrators' award.

[5] Recognizing that its judgment would be appealed, the court also found that the arbitrators failed to give the defendant full credit for the $45,123.57 in medical expenses and temporary total benefits. The court further found that the arbitrators failed to apply a credit for future workers' compensation benefits that the plaintiff may receive. It did not, however, address the defendant's claim regarding the arbitrators' misconduct for failure to grant a continuance or the plaintiff's claims for the awarding of prejudgment interest.

fact from which the court reasonably can infer the fact in issue." (Internal quotation marks omitted.) *Lawrence* v. *New Hampshire Ins. Co.,* 29 Conn. App. 484, 490, 616 A.2d 806 (1992), quoting *Chmielewski* v. *Aetna Casualty & Surety Co.,* supra, 660–61 n.15. A reviewing court must defer to the arbitrators' right to credit testimony in whole, in part, or not at all. See *Chmielewski* v. *Aetna Casualty & Surety Co.,* supra, 661 n.15. The fact that a possibility exists that two inconsistent conclusions may be drawn from the evidence does not prevent the arbitrators' finding from being supported by substantial evidence.

To find that the plaintiff was covered by his mother's policy, the arbitrators needed to find that he was a resident in her household. In defining the terms "resident of the same household," our Supreme Court quoted Webster's Third New International Dictionary which defined "household" as: " '[T]hose who dwell under the same roof and compose a family: a domestic establishment; specif: a social unit comprised of those living together in the same dwelling place.' " *Griffith* v. *Security Ins. Co.,* 167 Conn. 450, 454, 356 A.2d 94 (1975); *Middlesex Mutual Assurance Co.* v. *Walsh,* 218 Conn. 681, 686, 590 A.2d 957 (1991). On the basis of this definition, our courts have determined that there are two criteria that must be met for a person to qualify as a "resident of the same household." *Lawrence* v. *New Hampshire Ins. Co.,* supra, 492. We determine first whether the evidence in this case was sufficient to establish that the plaintiff had a close, family-type relationship with the members of the D'Addio household. *Middlesex Mutual Assurance Co.* v. *Walsh,* supra; *Lawrence* v. *New Hampshire Ins. Co.,* supra. We consider second whether the facts in this case were sufficient to establish that the plaintiff actually lived in the D'Addio household. *Middlesex Mutual Assurance Co.* v. *Walsh,* supra; *Lawrence* v. *New Hampshire Ins. Co.,* supra.

The arbitrators' finding of coverage here was supported by substantial evidence. On the basis of the record before it, the arbitrators could have reasonably found that the plaintiff was a resident in his mother's household. They reasonably could have found that the fact that the plaintiff shared facilities with his mother, used her automobile, lived in the same physical premises, lived there his entire life, and shared a mailing address were sufficient to establish a close family-type relationship with the inhabitants of that household and that the plaintiff actually lived in the household. The trial court's role was not to draw inferences from evidence presented to the arbitrators, but rather to discover whether the arbitrators' findings of fact were reasonable.[6]

Our independent review of the record presented to the trial court persuades us that the critical factual determination, that the plaintiff was a resident of the household, was supported by substantial evidence. See *Chmielewski* v. *Aetna Casualty & Surety Co.,* supra, 660–61.

## II

The plaintiff also asserts that the arbitrators' damage award was final, binding, and not reviewable for errors of law or fact. He contends that in addition to vacating the arbitrators' award improperly, the trial court, in the event that its judgment was reversed, gratuitously supported CIGA's claims for entitlement to credits for workers' compensation payments paid and payable to the claimant. He asserts that in effect the trial court subjected the entire arbitration award to de novo review.

---

[6] The issue is thus not whether the trial court would have found as the arbitrators did, but whether the arbitrators' finding is supported by substantial evidence.

The plaintiff failed to raise this claim in the trial court.[7] Accordingly, we do not review this claim raised for the first time on appeal. *Rydingsword* v. *Liberty Mutual Ins. Co.*, supra, 9–10 n.1; *Cahill* v. *Board of Education*, 187 Conn. 94, 99–100, 444 A.2d 907 (1982). "Only in the most exceptional circumstances will this court consider a claim that was not raised in the trial court. . . . Such exceptional circumstances may occur where a new and unforeseen constitutional right has arisen between the time of trial and appeal or where the record supports a claim that a litigant has been deprived of a fundamental constitutional right and a fair trial. . . . An exception may also be made where consideration of the question is in the interest of the public welfare or of justice between the parties." (Citations omitted.) *Cahill* v. *Board of Education*, supra. We conclude that none of these exceptions are applicable in this case and thus we will not review this claim.

### III

The plaintiff further asserts that he is entitled to prejudgment interest from the date of the arbitration award, February 14, 1992. Because the trial court vacated the arbitrators' awards, it did not have the opportunity to adjudicate this claim. On remand, the trial court should address the issue of whether the plaintiff is entitled to prejudgment interest.[8]

---

[7] We note that it is somewhat disingenuous for the plaintiff to make this claim on appeal. When the plaintiff moved to confirm the arbitration award, he also moved in the alternative that "the award be corrected to the sum of $299,900.00, as the arbitrators gave credit in the amount of $25,123.57 for compensation benefits paid, when such benefits should have gone to reduce the covered claim which was in an amount far in excess of the statutory limit of liability of defendant Connecticut Insurance Guaranty Association." The plaintiff thus requested at trial what he seeks now to claim to be error, that the trial court conduct a de novo review of the damage award.

[8] General Statutes § 37-3a provides for the award of interest on money detained after it becomes due and payable. Pursuant to this statute, a trial

## IV

The defendant asserts that the trial court's judgment vacating the arbitrators' award should be affirmed on the alternative ground that there was arbitrator misconduct in refusing to grant the defendant's application for a continuance.[9] This claim was premised on the fact that the arbitrators would not grant a continuance until the workers' compensation commissioner determined the extent of the plaintiff's permanent partial disability and the amount of his award, or in the alternative credit the defendant concerning the amount of any award the workers' compensation commissioner may make. In light of our remand and our Supreme Court's decision in *Rydingsword* v. *Liberty Mutual Ins. Co.*, supra, 21, 22 n.21, this issue is moot.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment confirming the arbitrators' finding of coverage, for further proceedings to determine whether the plaintiff is entitled to prejudgment interest and with direction to remand the case for arbitration in accordance with the insurance policy to determine only the amount to be

court has discretion to award prejudgment interest on an arbitration award retroactively to a date prior to the date of the trial court's judgment affirming the award. *Middlesex Mutual Assurance Co.* v. *Walsh*, 218 Conn. 681, 701–702, 590 A.2d 957 (1991); *Chmielewski* v. *Aetna Casualty & Surety Co.*, 218 Conn. 646, 675–76, 591 A.2d 101 (1991). Implicit in that determination is the conclusion that the prior date may be the date of the arbitration award. The trial court has the discretion under General Statutes § 37-3a to determine when the amount recoverable was payable under the policy and whether the insurance company wrongfully detained that money. *Middlesex Mutual Assurance Co.* v. *Walsh*, supra.

[9] In its memorandum of decision, the trial court did not address this issue or the issue of entitlement to prejudgment interest, which were both raised at trial, because it vacated the award due to what it found to be a lack of substantial evidence supporting the issue of coverage.

deducted from the award to the plaintiff on account of any permanent partial disability compensable under the Workers Compensation Act.

In this opinion the other judges concurred.