[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TOVACATE ARBITRATION AWARD
CT Page 6862-CC
Traystman Traystman for plaintiff.
Halloran Sage for defendant.
On May 13, 1993, the plaintiff, Eileen Smogowicz, filed an application to vacate an arbitration award involving a matter between the plaintiff and the defendant, State Farm Mutual Automobile Insurance Company ("State Farm"). The plaintiff alleges the following facts. On April 9, 1991, the plaintiff sustained injuries when a collision occurred between the vehicle she was occupying and a vehicle operated by Armando Baldelli. The plaintiff submitted a claim for underinsured motorist benefits under a policy of insurance, Policy No. 4899-912-07D, which was issued by State Farm to the plaintiff's husband, Adam Smogowicz ("Smogowicz"). The plaintiff and the defendant proceeded to arbitration pursuant to the underinsured motorist provision of said insurance policy.
For purposes of the arbitration of the plaintiff's claim for underinsured motorist benefits, it was stipulated and agreed that the defendant was at fault for the accident and that the plaintiff had exhausted the $20,000.00 liability limit applicable to Baldelli's vehicle. The declarations for the policy under which the plaintiff was making her claim reflected liability coverage of $100,000.00 and uninsured motorist coverage of $20,000.00. The plaintiff argued, however, that the uninsured motorist coverage was $100,000.00. State Farm claimed that the uninsured motorist coverage limit was $20,000.00. The principal coverage issue before the arbitrators was whether there was $100,000.00 or $20,000.00 of uninsured motorist coverage available under the policy against which the claim was made. Resolution of this issue turned on whether Smogowicz had elected, in writing, uninsured motorist limits which were less than the policy's liability limits.
On April 13, 1993, the arbitrators issued a written decision. A majority of the arbitrators found that Smogowicz had elected CT Page 6863 lesser uninsured motorist benefits in the amount of $20,000.00.[1]
Accordingly, because the uninsured motorist limits equalled the tortfeasor's liability coverage, the arbitrators found that the plaintiff did not have a viable underinsured motorist claim.
On May 25, 1993, State Farm filed an answer and a counterclaim seeking confirmation of the arbitration award. "`Questions of law decided by arbitrators in compulsory arbitration proceedings pursuant to General Statutes § 38a-336 are subject to de novo review by the [trial] court.'" Allstate Ins. Co. v. Howe, 31 Conn. App. 132,137, 623 A.2d 1031 (1993); see also LumbermensMutual Casualty Co. v. Huntley, 223 Conn. 22, 26,610 A.2d 1292 (1992). "When reviewing an arbitration panel's factual findings considering underinsured motorist coverage, our courts' standard of review is whether the arbitrators' findings are supported by substantial evidence." D'Addio v. Connecticut Ins.Guaranty Assn., 30 Conn. App. 729, 733, 622 A.2d 609 (1993), citing Rydingsword v. Liberty Mutual Ins. Co., 224 Conn. 8, 21,615 A.2d 1032 (1992).
 The substantial evidence test in the context of arbitration requires that a court determine whether substantial evidence exists in the record to support the arbitration panel's findings of basic fact and whether the conclusions drawn from these facts are reasonable. . . . Substantial evidence will be found to exist if the . . . record supplies a substantial basis of fact from which the court reasonably can infer the fact in issue.
(Citation omitted; internal quotation marks omitted.) Capozzi v.Liberty Mutual Fire Ins. Co., 32 Conn. App. 250, 258,629 A.2d 424 (1993).
General Statutes § 38a-336(a)(2)[2] provides as follows:
 Notwithstanding any provision of this section to the contrary, each automobile liability insurance policy issued or renewed on and after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing CT Page 6864 by the insured.
The intent of the legislature in adopting subsection (2) was to insure "that the decision to reduce uninsured motorist coverage by consumers be an informed one." Nationwide Mutual Ins. Co.v. Pasion, 219 Conn. 764, 771, 594 A.2d 468 (1991), citing TravelersIndemnity Co. v. Malec, 215 Conn. 399, 402-03,576 A.2d 485 (1990).
A majority of the arbitrators (the "arbitrators") relied on the court's reasoning in Harlach v. Metropolitan Property LiabilityIns. Co., 221 Conn. 185, 602 A.2d 1007 (1992), in support of their decision. In Harlach, the court held that an insured is bound by a written request for lesser uninsured motorist limits regardless of his claims that he did not understand what he was doing or that he did not intend to do so. Id. The court noted that there is nothing in the uninsured motorist statute which alters the commercial contractual nature between the insurer and the insured.Id., 190. The insurer has no fiduciary duty to the insured to explain uninsured motorist coverage or the advantages or disadvantages of procuring certain uninsured motorist limits. Id. "All that is required . . . for an effective rejection is a writing signed by the named insured." Id., quoting Silver v. Blusher, 770 P.2d 878,883 (Okla. 1988), cert. denied, 493 U.S. 817, 110 S.Ct. 70,107 L.Ed.2d 37 (1989).
"`In order to waive a claim of law it is not necessary . . . that a party be certain of the correctness of the claim and its legal efficacy. It is enough if he knows of the existence of the claim and of its reasonably possible efficacy.'" Harlach v. MetropolitanProperty Liability Ins. Co., supra, 193. "The conclusion that a party has waived a right is one of fact for the trier and not one which can be drawn by the court, unless, on the subordinate facts found, such a conclusion is required as a matter of law." Id.
The arbitrators found the following facts. Prior to May of 1985, State Farm sent Smogowicz at least two notifications of the change in the uninsured motorist law and of his options as a result of the change in the law. (Defendant's Exhibit D: 5/84 State Farm form regarding uninsured motor vehicle coverage; Defendant's Exhibit E: 5/84 State Farm form regarding uninsured motorist coverage). Smogowicz testified that he had received the State Farm green card election form and "threw it out" without taking the opportunity to read the information forwarded. (Defendant's Exhibit L: sworn statement testimony pp. 73-76). Because State CT Page 6865 Farm did not receive a signed green card, State Farm forwarded to Smogowicz a notice of additional premium due for the increased uninsured motorist coverage. (Defendant's Exhibit F: Balance due notice from State Farm).
Smogowicz's request for lesser insured motorist limits was written on the billing for the extra premium imposed to raise the prior $20,000.00 uninsured motorist coverage to $100,000.00 Said request provides as follows: "Have already signed green sheets 2x DO NOT want extra (sic) insurance. Spoke to agent, told me to cross out above." (Defendant's Exhibit F: Balance due notice from State Farm). The portion crossed out was the notice regarding the amount due and the necessity of paying the amount due in order to continue the policy coverage until the next renewal date. (Defendant's Exhibit F: Balance due notice from State Farm). Smogowicz's signature followed. (Defendant's Exhibit F: Balance due notice from State Farm).
Relying on Harlach v. Metropolitan Property Liability Ins.Co., supra, the arbitrators concluded that Smogowicz's writing "emphatically, in underlined words, reflects Mr. Smogowicz's request for lower limits." The arbitrators concluded that State Farm issued coverage in the amount of $20,000.00 on the basis that "Mr. Smogowicz emphatically advised in writing, on the very billing for the additional premium coverage, of his firm election of lower coverage, further stating that he had previously signed green sheets (election forms) on two occasions."
The arbitrators' basic findings of fact are supported by substantial evidence. See Capozzi v. Liberty Mutual Fire Ins. Co., supra, 258. Additionally, the conclusions drawn from those facts are reasonable. See Id. Accordingly, the plaintiff's application to vacate the arbitration award is denied.
AUSTIN, JUDGE