[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT
I. FACTUAL AND PROCEDURAL BACKGROUND
Most of the relevant facts are not in dispute. On January 19, 1990, the plaintiff and the defendant were parties to an insurance agency agreement. At the time, the defendant processed an application from Barbara Zakrzewski to the plaintiff, requesting automobile insurance for each of the two automobiles owned by Zakrzewski. The form which the plaintiff used was entitled "Accord Personal Automobile Application". This form was completed by the defendant and signed by Zakrzewski. The form requested $100,000 of liability coverage and $40,000 of uninsured/underinsured motorist coverage for each of her two motor vehicles. At the time of Zakrzewski's application, General Statutes § 38-175c (now General Statutes § 38a-336) required that every automobile liability insurance policy "issued or renewed on or after July 1, 1984" was to have uninsured motorist coverage equal to the liability coverage of the policy "unless the insured requests in writing a lesser amount".
On July 19, 1990, John Sliwka, Zakrzewski's son, was seriously injured in a motor vehicle accident when the car in which he was a passenger went off the road and overturned. Sliwka filed a claim against the operator's insurance carrier which paid its policy limit of $20,000. He then filed a claim against the plaintiff for underinsured motorist coverage under Zakrzewski's policy. Sliwka alleged that there had been no written request by CT Page 8939 Zakrzewski for uninsured/underinsured motorist coverage as required under § 38a-336 of the statutes. Since the policy provided for $100,000 of liability coverage, Sliwka filed a claim, alleging he was entitled to $180,000 worth of coverage: $100,000 for each of his mother's two insured motor vehicles less the $20,000 he had received from the tortfeasor's policy.
After its review, the plaintiff company concluded that the Accord application which Zakrzewski signed did not fulfill the statutory requirement of a written request for a lower limit of uninsured/underinsured motorist coverage for her vehicles. The plaintiff concluded that it had exposure to Sliwka for $180,000 and settled the claim for $160,404. Plaintiff then filed a two count complaint against the defendant, claiming breach of contract and negligence. Plaintiff claimed damages in an amount by which the plaintiff's payment to Sliwka exceeded the coverage of the policy.
Trial was held on the issue of the Accord application form and whether it satisfied the statutory requirement. Plaintiff argued that it did not and that the defendant should have used a separate, supplemental application form which the plaintiff had prescribed. The jury returned a verdict in favor of the plaintiff on the breach of contract count, awarding $20 in damages, and in favor of the defendant on the negligence count. The plaintiff appealed the trial court's judgment raising the issue that the trial court improperly refused to instruct the jury as to the writing requirement.[1] General Accident Insurance Company ofAmerica v. Powers, Bolles, Houlihan, and Hartline, Inc., 38 Conn. App. 290
(1995). The defendant cross-appealed. As a result of plaintiff's appeal, the case was remanded for a new trial; defendant's appeal was dismissed.
In the case which is now before this court on remand, the parties have filed cross motions for summary judgment with attached memoranda of law on the issue of statutory construction of the writing requirement under § 38a-366 (a)(2) of the general statutes. The court heard oral argument on the motions on October 7, 1996. At that time all parties were represented by counsel who had full opportunity to be heard. The parties submitted supplemental memoranda of law to this court on October 15, and October 18, 1996.
II. DISCUSSION
CT Page 8940
The defendant has moved for summary judgment claiming that it is not liable to the plaintiff in contract or negligence as a matter of law because the Accord application satisfied the writing requirement of General Statutes § 38a-366 (a)(2). Defendant, therefore, claims that it committed no breach of contract or other duty.
Plaintiff's motion for summary judgment is premised on the theory that the court must construe the language of General Statutes § 38a-366 (a)(2) as unambiguous; thus, it requires a more exacting expression of an insured's conscious decision and request to forego the statutory amount of uninsured/underinsured motorist coverage. Alternatively, plaintiff argues even if the language of the statute is deemed ambiguous by the court, a more exacting standard than the Accord application offered by the defendant is necessary as a matter of law.
This court agrees that the words of the statute are clear and disposes of the issues on the ground that an application for insurance, provided by the agent and signed by the insured, with no separate, clear or otherwise conspicuous expression of a decision to purchase an amount of coverage that is less that the statutorily prescribed amount, is not a "request in writing for a lesser amount" within the meaning of the statute. Accordingly, plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment is denied.[2]
A. SUMMARY JUDGMENT. GENERALLY
"Summary judgment shall be rendered forthwith if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Millerv. United Technologies Corp., 233 Conn. 732, 745 (1995). "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." Catz v.Rubenstein, 201 Conn. 39, 48 (1986). "The party moving for summary judgment has the burden of showing the absence of any genuine issues as to all material facts, which under applicable principles of substantive law, entitle him to judgment as a matter of law. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Suarez v. Dickmont Plastics, Corp., 229 Conn. 99,105 (1994); Miller, supra at 744. "[T]he party opposing CT Page 8941 [summary judgment] must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such issue . . ." (Citation omitted.) Field v. Kearns, 43 Conn. App. 265, 269 (1996).
B. STATUTORY CONSTRUCTION GENERALLY
"[R]esolution of this issue turns on a proper construction of the statutory phrase [requests in writing a lesser amount] . . . In determining the meaning of that phrase `we are guided by the same considerations that inform our construction of statutes generally. Our fundamental objective . . . is to ascertain and give effect to the apparent intent of the legislature . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter' . . ." (Citations omitted.) Mac's Car City, Inc. v. Diloreto, 238 Conn. 172,176 (1996). "When the words of a statute are plain and unambiguous, [the court] need look no further for interpretive guidance because [it] assume[s] that the words themselves express the intention of the legislature . . ." (Citations omitted.)Windham Taxpayers Association v. Board of Selectmen, 234 Conn. 513,532 (1995). The court is bound to construe statutory words and phrases . . . according to the commonly approved usage of the language. General Statutes, § 1-1 (a). "In order to ascertain the plain meaning of the word . . . it is appropriate to look to the dictionary definition . . ." Wrinn v. State, 234 Conn. 401,406 (1995). "If two or more words are grouped together, it is possible to ascertain the meaning of a particular word by reference to its relationship with other associated words and phrases under the doctrine on noscitur a sociis . . ." State v.Szymkiewicz, 237 Conn. 613, 618 (1996). Finally, as a general rule, the court should not read a statute in such a way as to render a portion of it superfluous. State v. Christiano,228 Conn. 456, 472 (1994).
C. THE INSTANT CASE
Applying these well established rules of statutory construction to the facts, it is clear that the phrase "request in writing of a lesser amount" demands a finding that the legislature intended to require a more exacting writing that an CT Page 8942 insurance application, filled out by the insurance agent, signed by the insured, containing no conspicuous notice of the insured's right to the statutory amount of coverage or specified alternatives, or of the effect of making the election. The language of the provision is not ambiguous. See Nationwide MutualInsurance Co. v. Pasion, 219 Conn. 764, 769-70 (1991); AetnaCasualty Surety Co. v. Warichar, Superior Court, J.D. of Fairfield at Bridgeport, Docket No. 281614 (July 7, 1994, Thim, J.). "Therefore the court may assume that `the words themselves express the intent of the legislature'". Wrinn, supra at 405. In so doing, one should look to the commonly approved usage of the words to ascertain their meaning. As Judge Thim pointed out inAetna Casualty, supra, "[s]tatutory provisions allowing for the rejection or limitation of uninsured/underinsured motorists' coverage should be narrowly and strictly construed since the provisions detract from the public policy goals of protecting innocent victims". Fournier v. Shaklee Corporation, Superior Court, J. D. of Hartford/New Britain at New Britain, Docket No. 455413 (May 6, 1994, Lavine, J.).
A "request" is commonly understood as an "instance of asking for something: an expressed desire", or more particularly, "a document or other writing embodying such an expressed desire".Webster's Third New International Dictionary (1966).
In legal terms, a "request" is deemed to be an "expression of a desire to some person for something to be granted or done".Black's Law Dictionary (6th Ed. 1990), 1304. (Emphasis added.) "Writing" in lay terms, refers to "a letter, note or notice used to communicate or record information". Webster's, supra at 2641. The legal meaning is similar: "the expression of ideas by letters visible to the eye". Black's, supra at 1609. Considering those controlling words in the context of the statutory phrase "unless the insured requests in writing a lesser amount", it is clear that the legislature did not intend that by simply filling out a dollar amount of coverage, inconsistent with the statutory amount, on an application to purchase insurance would be sufficient. On the contrary, it is apparent that the legislature intended that the insured be the maker of the request; that the request be an attempt on the part of the recipient, and that the writing unambiguously communicate "a present intention . . . to elect a lesser coverage". See Fournier, supra. As our Supreme Court stated, the legislative history reveals "an intention to increase the public's consciousness as to the availability of this kind of insurance by requiring increased coverage unless the CT Page 8943 insured specifically requested otherwise". Traveler's IndemnityCo. v. Malec, 215 Conn. 399, 403 (1990).
This same conclusion is supported by the extensive legislative history of the relevant uninsured/underinsured motorist coverage statutes. The Supreme Court has "recognized that a subsequent amendment to an existing statute may clarify the legislature's original intent". Daly v. DelPonte, 225 Conn. 499,511 (1993).
Chronologically, in 1967, Public Act 510 initiated procedures for regulating insurance coverage to protect consumers against harm that might result from uninsured motorist. Public Act 79-235
extended the scope of the provision to provide for coverage for harm occasioned by underinsured motorists. In 1983,Public Act 83-461 was enacted to require that uninsured/underinsured motorist coverage be equal to the amount purchased to protect against loss resulting from liability unless a different amount was requested in writing by the insured. Most importantly, General Statutes, § 38a-336 was amended by "An Act Concerning Automobile Insurance Reform, Public Act 93-297, to require that:
 No such written request for a lesser amount shall be effective unless any named insured has signed an informed consent form which shall contain a heading in twelve-point type and shall state: WHEN YOU SIGN THIS FORM, YOU ARE CHOOSING A REDUCED PREMIUM, BUT YOU ARE ALSO CHOOSING NOT TO PURCHASE CERTAIN VALUABLE COVERAGE WHICH PROTECTS YOU AND YOUR FAMILY. IF YOU ARE UNCERTAIN ABOUT HOW THIS DECISION WILL AFFECT YOU, YOU SHOULD GET ADVICE FROM YOUR INSURANCE AGENT OR ANOTHER QUALIFIED ADVISOR.
(Capitals in original.) It is clear from this statutory progression and the exacting method ultimately imposed byPublic Act 93-297 for satisfying the writing requirement, that the legislature sought in 1983 and at all times thereafter to protect consumers from making reckless purchases of insurance that would be inadequate to meet their minimal needs by mandating adequate levels of coverage that could only be circumvented by express, informed, and written waiver. See Nationwide Mutual InsuranceCo., supra at 770-71. CT Page 8944
Case law generally supports the argument that a more exacting written request is required. The Supreme Court has held that something more than a written request signed by one named insured is necessary to bind a second named insured to any amount of coverage that is less than the statutory amount. Id. at 771. Similarly, our Supreme Court demanded more than a general blanket request for minimal or no uninsured/underinsured motorist coverage which was made prior to the enactment ofPublic Act 83-461 [which amended General Statute, § 38-175c (now 38a-336)] to require uninsured motorist coverage equal to the liability amounts purchased absent an insured's "request in writing of a lesser amount". Traveler's Indemnity Co., supra. The Supreme Court determined that if the legislature had intended that past acts would constitute compliance with the mandate of requests for a lesser amount pursuant to the statute, language to that effect would have appeared in the statute. Id. at 404. Since the legislature has in the past evidenced its ability to prescribe the method for complying with the written request requirement, if it had intended that an application for insurance would be satisfactory, it would have included that language in one of another of the public acts that amended this law.
Our superior courts have helped to distinguish the adequate from the inadequate written requests. A bid specification, including a general election to reject statutory minimal levels of uninsured motorist coverage, designed to apply to future contracts of insurance and dated and signed four years prior to the claim against the policy in 1988 was not enough to constitute a "clear, unequivocal request [as] required to make an effective election of lesser coverage". Fournier, supra. A consumer's bid specification embodying coverage amounts that were less than those that would be statutorily imposed, transmitted to an insurance broker from whom a policy was subsequently purchased was not enough to satisfy the requirement that elections of lower than statutory amounts of uninsured/underinsured motorist coverage be made consciously and in writing. American MotoristsInsurance Co. v. Carson, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 290293 (March 11, 1992, Thim, J.). It was not an effective waiver of the statutory amount of coverage when a purchaser invited an insurer to submit a proposal to sell the purchaser coverage which recited an amount that was less than the statutory amount of coverage for uninsured/underinsured motorist, even when the purchaser subsequently purchased the proposed policy with the recited limits. Aetna Casualty Surety Co., supra. CT Page 8945
What our courts have deemed a sufficient request in writing is also instructive. The Supreme Court has held that where an insured was provided with a notice, explaining changes in the law pursuant to General Statutes § 38-175c (now § 38a-336) read the notice, selected one of five optional uninsured motorist coverage choices, indicated his preference by initialing the selection, signed, dated, and returned the notice to the insurer by mail, the waiver was effective. Harlach v. MetropolitanProperty Liability Ins., 221 Conn. 185, 188, n. 3 (1992). An insured was also considered to have effectively waived his right to the statutory amount of uninsured/underinsured motorist coverage when, after receiving two notices from the insurance company in the mail, detailing the changes in uninsured motorist law, he received a bill for the adjusted higher premium. He responded by crossing out the higher amount and writing on the bill "have already signed green sheets [notices] 2X DO NOT want extra insurance. Spoke to agent, told me to cross out above, and mailed the bill to the insurer. Smogowicz v. State Farm MutualAuto Insurance Co., 9 CSCR 856 (July 19, 1994, Austin, J.)
This court concurs with those trial court decisions which have determined that a clear, conscious, unambiguous, written expression indicating the insured's considered decision to forego the statutory amount of uninsured/underinsured motorist coverage and an awareness of the effect of that election, made in writing be conspicuous language proved by the insurer or by insured's own hand, signed and dispatched by the insured fulfills the requirements for a legal waiver.
In the instant case the defendant did not obtain a request in writing that conforms to these exacting standards. Rather, the defendant filled out an application to obtain automobile insurance generally, recited a dollar amount of uninsured/underinsured motorist coverage and elicited a signature. There is no evidence in the writing that the alleged election to purchase less uninsured/underinsured motorist coverage that the statute would have prescribed was informed, conscious or reflective. These facts, coupled with the defendant's concession that it owed the plaintiff a duty to obtain a sufficient written request, and its failure to do so, lead this court to the conclusion that there is no issue of material fact remaining in the case as to the issue of the Accord application. CT Page 8946
III. CONCLUSION
This court finds that the Accord application form was deficient as a matter of law for purposes of electing a lesser amount of uninsured/underinsured motorist coverage pursuant to General Statutes, § 38-175c, as amended. To hold otherwise would be to render the express language of the statute superfluous. Accordingly, the plaintiff's motion for summary judgment is granted and the defendant's motion for summary judgment is denied. The court, having decided the motions on the basis of statutory construction, does not reach plaintiff's alternative arguments mentioned at oral argument by both parties.
SUSAN B. HANDY JUDGE, SUPERIOR COURT