## KATHRYN LUCAS *v.* GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA

Superior Court        Judicial District of        File No. CV 97-0480913S
                      New Britain

Memorandum filed November 17, 1998*

*Ericson, Scalise, Mangan & Zembko*, for the plaintiff.

*Wilson, Fusco & Beyer*, for the defendant.

## I

## INTRODUCTION

GRAHAM, J. The plaintiff, Kathryn Lucas, was involved in an automobile accident, along with her husband and children, on February 23, 1985. Subsequently,

---

* Affirmed. *Lucas* v. *General Accident Ins. Co. of America,* 59 Conn. App. 544, 759 A.2d 99 (2000).

she made an uninsured-underinsured claim under the policy issued to her father by the defendant, General Accident Insurance Company of America (General Accident). Under the policy, Lucas is a "covered person" only if she is both related to the insured by blood (which is undisputed), and a resident of his household. The parties, pursuant to a policy provision conforming to General Statutes § 38a-336 (c), submitted to a three arbitrator panel the coverage issue of whether, on the accident date, Lucas was a resident of her father's household in New Britain, as the term is defined in the policy.

By a two to one decision issued on May 1, 1997, the majority of the panel held that "[Lucas], who has the burden of proving residency, has failed to produce sufficient evidence to satisfy the objective indicia to warrant the conclusion that she was a resident of the insured's household." They found that Lucas and her husband had sold their house in Massachusetts in late 1984, with a closing date of March 1, 1985, and had contracted to buy a house in West Hartford with a closing date of March 6, 1985. Her children were registered to begin school in West Hartford on February 26, 1985. In the interim, beginning on February 20, 1985, she, her husband and her four children were staying as a matter of convenience for a brief, defined period with her parents in New Britain. They ate and slept there and brought seasonal clothing and toiletries with them. They shared meals and the house with the insured and his wife and had mail forwarded to them there. Lucas did not move any furniture to the New Britain house, obtain a telephone there, register to vote there, or show New Britain as her residence on any driver's license, automobile registrations, tax records, insurance cards or bank accounts. She did not intend to be a resident at the insured's home.

The majority concluded that Lucas' "[m]ere physical presence" did not establish residency in New Britain and that she was still a resident of Massachusetts as of the accident date. The panel specifically applied a test of objective factors to reach their decision, and recognized that every residency determination requires an analysis of the facts peculiar to each claim. The dissent, on the same facts, also recognized that residency is a fact driven issue with the decision dependent on the facts peculiar to a claim. Without taking exception to the majority's underlying factual findings, the dissent focused on the physical presence of Lucas in her father's house and found her a resident of that household on the accident date.

Both Lucas and the defendant subsequently placed the matter before the Superior Court, the former by an application to vacate the arbitration award under General Statutes § 52-418 and the latter by a motion to confirm the award under General Statutes § 52-417. Each party has briefed the matter, oral argument was had, and the record of the arbitration proceeding under General Statutes § 38a-336 was filed with the court.[1] The parties are agreed that the issue before this court is whether the facts of the present case support the conclusion reached by the majority of the arbitration panel.

II

## THE SCOPE OF THE COURT'S REVIEW OF THE ARBITRATION AWARD

"[A] coverage issue is one that is governed wholly by the policy language . . . or involves the interpretation of both statutory and policy language . . . or otherwise implicates the scope of coverage afforded by

---

[1] The initial record was incomplete because the arbitration exhibits were misplaced. Counsel filed a stipulation as to the contents of such. They also waived the 120 day decision limit.

the terms of the policy." (Citations omitted.) *Wynn* v. *Metropolitan Property & Casualty Ins. Co.*, 30 Conn. App. 803, 806, 623 A.2d 66 (1993), aff'd, 228 Conn. 436, 635 A.2d 814 (1994). This is the case here.

With respect to compulsory arbitration proceedings, as here, the trial court conducts a de novo review of the legal issues. *Bodner* v. *United Services Automobile Assn.*, 222 Conn. 480, 486, 610 A.2d 1212 (1992). The judicial standard of review of legal issues with respect to arbitration awards depends upon "whether the arbitration was voluntary or compulsory, and, if voluntary, whether the submission was restricted or unrestricted." *Maluszewski* v. *Allstate Ins. Co.*, 34 Conn. App. 27, 32, 640 A.2d 129, cert. denied, 229 Conn. 921, 642 A.2d 1214 (1994). "If the parties engaged in compulsory arbitration, [u]pon judicial review of compulsory arbitration proceedings pursuant to § 38a-336 (c), the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators." (Internal quotation marks omitted.) Id., 32–33; *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 191, 530 A.2d 171 (1987).

A different standard is utilized, however, when reviewing the findings of fact and the conclusions drawn from them in that arbitration decision. "When reviewing an arbitration panel's factual findings considering underinsured motorist coverage, our courts' standard of review is whether the arbitrators' findings are supported by substantial evidence. . . . The test in this context requires that a court determine whether substantial evidence exists in the record to support the [arbitration panel's] findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Substantial evidence will be found to exist if the . . . record supplies a substantial basis of fact from which the court reasonably can infer the fact in issue. . . . A reviewing court must defer to the arbitrators'

right to credit testimony in whole, in part, or not at all. . . . The fact that a possibility exists that two inconsistent conclusions may be drawn from the evidence does not prevent the arbitrators' finding from being supported by substantial evidence." (Citations omitted; internal quotation marks omitted.) *D'Addio* v. *Connecticut Ins. Guaranty Assn.*, 30 Conn. App. 729, 733–34, 622 A.2d 609, cert. denied, 226 Conn. 903, 625 A.2d 1375 (1993). "The trial court's role was not to draw inferences from evidence presented to the arbitrators, but rather to discover whether the arbitrators' findings of fact were reasonable." Id., 735.

### III

### THE ARBITRATION DECISION REVIEWED

The initial question before this court is whether to apply the "de novo" or "substantial evidence" test in evaluating the arbitrators' conclusion that Lucas was not a resident in her father's household on the date in question. The determination of residency under Connecticut law is largely fact driven. As noted in J. Berk & M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (1993) § 8.4.2, p. 291 n.7, "[o]ftentimes the factual predicates for a legal decision of coverage will be as important, if not more important, than the actual legal conclusions. This particularly applies to issues such as 'residency' . . . ."

The Connecticut Appellate Court has applied the "substantial evidence" test in reviewing an arbitration decision as to whether a person was a "resident" of a household for purposes of uninsured-underinsured motorist coverage. *D'Addio* v. *Connecticut Ins. Guaranty Assn.*, supra, 30 Conn. App. 733. In *D'Addio*, the Appellate Court reversed the trial court's judgment vacating the arbitrator's unanimous finding that the plaintiff was an insured under his mother's insurance policy. Id., 735. There, the Appellate Court held that its

"independent review of the record presented to the trial court [persuaded it] that the critical factual determination, that the plaintiff was a resident of the household, was supported by substantial evidence." Id. In essence, the arbitration decision as to whether an individual is a resident of a household for purposes of uninsured-underinsured motorist coverage is reviewed primarily as a factual, and not a legal, conclusion.

The court has carefully reviewed the record of the arbitration, including the 105 page transcript of the hearing, the briefs addressed to the arbitrators, the exhibits and both the majority and minority opinions of the panel. The court finds that each of the majority arbitrators' findings set forth previously are supported by substantial evidence in the record. The court further finds that the critical factual conclusion drawn from those subordinate findings, that Lucas failed to prove that she was a resident of her father's household at the date of the accident, is both reasonable and supported by substantial evidence.

The court will review, de novo, the interpretation and application of law by the arbitrators. It is clear that, in reaching their decision, the majority arbitrators followed the traditional Connecticut legal test to determine residency. See *Middlesex Mutual Assurance Co.* v. *Walsh*, 218 Conn. 681, 590 A.2d 957 (1991); *Griffith* v. *Security Ins. Co.*, 167 Conn. 450, 356 A.2d 94 (1975); *Lawrence* v. *New Hampshire Ins. Co.*, 29 Conn. App. 484, 616 A.2d 806, cert. denied, 224 Conn. 923, 618 A.2d 528 (1992). They acknowledged that no one factor is controlling and the trier must analyze the specific facts of each case, utilizing standard objective factors which they listed. Fairly read, the majority opinion linked their factual findings and conclusion to that legal test and criteria. Their opinion correctly interprets and applies Connecticut law on this issue.

Lucas argues that she was a "temporary resident" of her father's household on the date of the accident, that there is no recorded Connecticut case with an identical factual situation and that the standard test and factors that were applied are inappropriate to such a situation. The court does not agree.

Every claim of residence may be unique and the flexibility of the Connecticut standard implicitly recognizes that. The fact that there is no case precisely on point under an uninsured-underinsured policy in Connecticut does not invalidate the majority's approach of using well established criteria to weigh Lucas' claim of residency.

In fact, there are several Connecticut decisions that touch upon the issue of temporary residency in the context of an uninsured-underinsured policy, although not as appeals from an arbitration award. In *Schratwieser* v. *Hartford Casualty Ins. Co.*, 44 Conn. App. 754, 692 A.2d 1283, cert. denied, 241 Conn. 915, 696 A.2d 340 (1997), the Appellate Court reversed a summary judgment on a complaint alleging uninsured-underinsured coverage under a father's policy for an adult daughter staying with her parents at the time of the accident, but with an apartment in another state. The court reviewed a number of the standard factors (where her car was registered, where she had a telephone in her name, how long her visit was, the nature of the use of her parents home, etc.) and held that "[w]hether a person is a resident within a household must be determined on the factual circumstances in each case." Id., 758.

In *Meola* v. *Peerless Ins. Co.*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 528700 (July 26, 1994) (*Corradino, J.*) (9 C.S.C.R. 893), the court was faced with a plaintiff who had an apartment lease at an address separate from her mother but claimed coverage under her mother's policy. The

plaintiff claimed that she resided with her mother and cited her use of her mother's home as a mailing address, for tax purposes, driver's license, voting address, to store belongings, and periodically to sleep in "her room" there. The court focused on the fact that the plaintiff had slept and lived elsewhere for months, but specifically noted that when there were two possible residences, even if one were temporary, the commonly used indicia become important. Id., 895.

Here, Lucas owned her Massachusetts home at the time of the accident, and was staying with her father for a relatively brief time, with a few of her belongings and her children. The use of traditional criteria to determine whether she had proven her residence to be at her father's in New Britain, and not at her house in Massachusetts, is consistent with *Schratwieser* and *Meola*. There is no persuasive reason to reject the traditional, fact driven factors approach simply because the plaintiff has labeled her short stay at her father's house a temporary residency.

## IV

## CONCLUSION

For the reasons set forth in this opinion, the application to vacate is denied and the motion to confirm is granted. Judgment shall enter for the defendant upon the arbitration award.